James R. GELLERMAN, Petitioner,

v.

Robert T. NIMMO, Administrator of Veterans Affairs (U.S. Veterans Administration), Respondent.

No. 82–2132.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1983.

Decided April 11, 1983.

Rehearing and Rehearing En Banc Denied June 2, 1983.

Claude Gillam, Evanston, Ill., for petitioner.

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for respondent.

Before CUDAHY and ESCHBACH, Circuit Judges, and KELLAM,* Senior District Judge.

CUDAHY, Circuit Judge.

Petitioner James R. Gellerman was removed from his position as a Counseling Psychologist for the United States Veterans Administration ("V.A.") in October 1980 on the grounds that his counseling was inadequate and his relationships with staff members were not professional and harmonious. He requests review of the United States Merit Systems Protection Board ("MSPB") decision affirming his removal. Gellerman challenges the evidence supporting his removal and raises issues of due process. We affirm.

## I.

Petitioner Gellerman was employed beginning April 1978 as a counseling psychologist for the V.A. at its guidance center on the campus of the Wisconsin State University—Stout, located in Menomonie, Wisconsin. On April 21, 1980, Gellerman was warned in writing by his supervisor, Terrence Collins, that he was not performing adequately in his position and that he would have sixty days to improve his work to meet performance standards. This improvement period was later extended through August 1, 1980. By a letter dated September 5, 1980, Gellerman was notified that he would be removed because of unsatisfactory performance. After the V.A.'s Regional Director sustained the removal, Gellerman appealed to the MSPB and a hearing was held on January 20–21, 1981. The presiding officer issued a thorough opinion finding that the removal was justified. The MSPB thereafter denied review, in a written decision, on June 17, 1982.

* The Honorable Richard B. Kellam, Senior District Judge of the United States District Court for the Eastern District of Virginia, is sitting by designation.

## II.

Our first concern is whether the MSPB findings that supported the removal action are supported by substantial evidence.[1] 5 U.S.C. § 7703(c)(3). *See Gipson v. Veterans Administration,* 682 F.2d 1004, 1008 (D.C.Cir.1982). We do not conduct a de novo review but rather determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brewer v. United States Postal Service,* 647 F.2d 1093, 1096 (Ct.Cl.1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

Gellerman's firing was based upon two charges: (1) inadequate counseling performance and (2) failure to maintain professional, harmonious relationships with guidance center staff. We find that both charges are supported by substantial evidence. The Board's presiding official, who conducted the hearing, based his decision on charge one both on the results of a numerical rating system and other evidence of performance deficiencies such as evidence of the "results" of Gellerman's counseling and testimony of a psychologist who worked with Gellerman. *See* Presiding Official's Decision at 9–10. Gellerman challenges the validity and application of the ratings system, claiming in essence that it did not yield credible evidence of performance deficiencies. The presiding official and the MSPB, however, found the system was adequate and petitioner's arguments here do not persuade us that we can say as a matter of law that the ratings could not be relied upon by the V.A. or the MSPB.

As for charge two, failure to maintain professional, harmonious relationships with the Veterans Administration guidance center staff, this is supported by a letter from John Wesolek, the director of the University of Wisconsin—Stout Vocational Development Center to which the appellant was attached. In his letter, Wesolek stated:

1. We are authorized by 5 U.S.C. § 7703 to review decisions of the MSPB.

I have some strong reservations about the capabilities of your assigned Counseling Psychologist, Mr. Gellerman. It is my opinion that he has limited effectiveness as the coordinator of the counseling unit. Since his arrival, I have been relating to you my observations of his *lack of professional competency and behavior.* At your suggestion, Mr. Kirsling, our staff psychologist, cooperated in a shared critiquing of case sessions with him. Jerry cited a number of problem areas at that time and Mr. Gellerman has not demonstrated any marked improvement to date. I have also observed and have had reported to me *numerous problems in his coordinating the intake and processing of VA cases and in communicating with VDC staff, primarily secretarial personnel.* I have had many discussions about these problem issues with Jim. Although he has made some improvement, *I would rate his overall handling of problem situations as inadequate. I also feel that his demeanor and dress are limiting factors in the professional handling of his job role.* It is my opinion that Mr. Gellerman has had a negative impact on the reputation of the VDC and has limited the overall functioning of the VA Counseling Unit. I feel it would be a more organized and productive operation with another person assigned as the unit coordinator.

Record at 206–07 (emphasis supplied). Gellerman does not challenge the substance of the letter but instead argues that it cannot be used to support the second charge because its author was not the appropriate person to register a complaint about petitioner's professional relationships with guidance center staff. We will consider this argument in the section that follows.

### III.

■ Our second concern is whether the V.A. and MSPB procedures were correct. 5 U.S.C. § 7703(c)(2). *See Doyle v. Veterans Administration,* 667 F.2d 70, 72 (Ct.Cl.1981).

Gellerman first argues that he did not receive a "reasonable and fair opportunity to improve" as prescribed in the V.A. Personnel Manual. The April 21 warning letter informed Gellerman "you will be given sixty days from the date you receive this letter to improve your work to meet your performance standards." A second letter extended the improvement period to August 1, 1980. Gellerman's complaint is that because the agency evaluated his work during the period up to August 1, used these "improvement period" evaluations to justify discharging him and did not evaluate him after August 1, he was effectively denied his opportunity to improve.

The facts rebut petitioner's claim that he had no reasonable and fair opportunity to improve. He was evaluated during fifteen counseling sessions over several months following the April 21 warning letter. The presiding officer compared the ratings achieved by the appellant in the first six sessions reviewed between April 21 and 24 and the last four sessions reviewed on July 23 and 24 and found "no appreciable improvement towards the minimum standard of performance" during this period. Gellerman did not satisfy the performance standards in April, in June, or in late July. *See* Record at 13–14. Moreover, the second warning letter clearly informs Gellerman that the evaluations "will be considered along with all other available information in deciding whether any adverse action will be taken *at the end of the 60 days.*" (Emphasis supplied).[2] Finally, we do not think the fact that the last evaluation occurred a week before the end of the improvement period constitutes a denial of petitioner's reasonable and fair opportunity to improve. Though petitioner argues that the "critical point is that [the agency] did not examine Gellerman's performance *after* the period to see whether he was meeting standards," Pet.Br. at 19, we do not think that the V.A. personnel guidelines or the warning letters require this.

---

**2.** The April 21 letter could have been more explicit regarding the agency's intent to use the improvement-period evaluations to justify discharge, though it does state that Gellerman's supervisor would be reviewing his work so as to enable him to monitor Gellerman's progress and assess the quality of his counseling. *See* Record at 8.

Petitioner's next argument is that the agency violated its own privacy requirement in having the reviewers present during counseling interviews. Petitioner raises this alleged violation,[3] together with a claim of agency interference, in an attempt to discredit the ratings he received, claiming that the presence of a third person in the counseling session distorted the results of the counseling. The presiding official and the MSPB, however, found there was no evidence of distortion,[4] and accepted the ratings as credible. We see no basis to overturn this credibility determination.

We reject petitioner's argument that the agency interfered with his performance. The presiding official found "no substance" to the excuse that Gellerman had insufficient time to prepare for his June 11 and 12 sessions and we see no basis to reject this finding. Nor do we see any procedural unfairness in giving Gellerman limited advance notice of his review by Dr. Lawson, a V.A. counseling psychologist consultant from Washington, D.C.

We also reject petitioner's argument that the agency failed to follow its procedures in demonstrating that Gellerman did not maintain professional and harmonious staff relations. The V.A. performance requirement regarding professional and harmonious staff relations indicates that a deficiency will be shown if there is a "justified, formal, substantive complaint[ ] *from professional staff.*" Performance Requirement i7, Record at 216 (emphasis supplied). Gellerman argues that Wesolek's letter, see *supra* at pp. 3–4, was not such a complaint because Wesolek was not a "professional staff" person within the meaning of the Performance Requirement.

We think the finding that Wesolek was a professional staff person for the purpose of commenting on Gellerman's staff relations is supported by substantial evidence. The V.A. shared the Vocational Development Center with Wisconsin State University—Stout. The university provided clerical staff support to Gellerman. *See* Tr. at 93. Wesolek, as the Center's director, supervised its overall activities including the clerical work done for the V.A. Tr. at 94. Thus, it was Wesolek who received complaints from the clerical staff about Gellerman. *See* Tr. at 100–18. We believe Wesolek should be considered a person from whom a complaint regarding staff relations should be received and given weight. Indeed, it appears he was in the best position of anyone to evaluate Gellerman's performance in this regard.

Gellerman's final series of objections involves allegations of error by the MSPB in not considering new evidence and allegations that the V.A. suppressed evidence favorable to petitioner. The evidence in issue consists of reviews of some of Gellerman's counseling sessions by five psychologists who did not testify at the hearing (Dr. Knudsen, Mr. Hering, Mr. Greasby, Dr. Dickerson and Dr. Stone), a survey of V.A. psychologists entitled "DVB Counseling Psychologists and Their Concepts of Vocational—Educational Counseling" and a V.A. publication about counseling disabled veterans.

Regarding the five psychologists' reviews of Gellerman's counseling sessions, two of the reviews—Dr. Knudsen's and Mr. Hering's—clearly did not constitute new evidence which could not, by the exercise of due diligence, have been presented at the hearing. Petitioner's statement in his affidavit given to the MSPB, that Knudsen and Hering were "unknown to [him] at the time of the hearing," leads us to conclude that these psychologists were not asked to review the sessions until *after* the hearing. *See* Record at 708, Pet.Br.at 41. Since nothing appears to have prevented Gellerman from timely seeking their analyses, we can only infer that he made a tactical deci-

---

3. *But see* Agency Response to Petition for Review at 12, Record at 751 (quoting from V.A. procedure recognizing at least for some purposes the possibility of an observer sitting in on a counseling session).

4. Four counselees who answered questionnaires sent out by Gellerman reported either that they felt the observer's presence had no positive or negative effect or that it had facilitated the session. *See* Record at 555–58.

sion before the hearing not to seek reviews other than those of Whalen, Wurtz and perhaps Greasby.[5]

Questions about the admissibility of the remaining evidence are resolved by our determination, after reviewing the evidence, that it does not cast such doubt on the determination of Gellerman's performance deficiency that a reasonable mind would not still accept this determination.[6] *See United States v. Walus,* 616 F.2d 283, 288 (7th Cir.1980). The remaining three psychologists' reviews, which the MSPB decided not to consider, were based on audio recordings of a few sessions, and at least two of the three reviews gave minimal support to Gellerman's position. For example, Greasby's review was based on just one counseling session and his comment was simply that Gellerman "handled it satisfactorily." Record at 719. Similarly, Dickerson, who reviewed four sessions, commented that Gellerman "seems to have a passing level of competence in counseling techniques and to have been doing average work." Record at 704. Finally, Stone, who reviewed three sessions, described Gellerman's work as "quite satisfactory." Record at 706. These reviews would not have changed the result.

The remaining new evidence consists of a survey of V.A. psychologists and a V.A. publication regarding counseling disabled veterans. Petitioner argues that these documents undercut the objective ratings system because he claims the ratings system assumes virtually all of the rated tasks should be completed in one interview while the documents indicate that counselings usually require more than one session. We think this evidence is not so crucial for four reasons: first, the presiding officer specifically addressed this argument and found after "careful examination of the testimony of the agency reviewers, . . . that they did

not arbitrarily assume the relevance of all 28 criteria in every case." Record at 638–39. Second, it appears there need not be an inconsistency between fulfilling many of the objectives of a session and having more than one session. For example, Dr. Lawson, who is a counseling psychologist consultant at the V.A. Central Office in Washington, D.C., was asked at the hearing the following question and gave the following answer:

Q. And regardless of whether it was an initial or an extension of a counseling session, a subsequent counseling session, would it not be expected that all of these different criteria would manifest themselves? The eliciting of the information and the tying together of information and relating it back and forth?

A. Yes, for the most part practically every one of these elements would be or should be made part of a counseling session.

Tr. at 66. Third, an examination of the ratings sheets done by the agency shows very few tasks for which Gellerman scored as high as an acceptable "3." Thus it is hard to see how discounting some of the ratings would make any real difference. Fourth, the presiding officer did not rely solely on the rating process. Instead, he went beyond the "numbers" and found that "the agency has not only established the appellant's charged numerical failure, *but has also shown by a significant preponderance of the related evidence* that the appellant's performance as a counselor is seriously deficient." Record at 640 (emphasis supplied).

### IV.

For the above reasons, the MSPB decision is

AFFIRMED.

---

**5.** It is not clear to us when Mr. Greasby was solicited to analyze Gellerman's work since Gellerman's affidavit states only that Greasby was "unable to testify at the time of the hearing due to his hospitalization." Record at 708. Greasby's affidavit, signed May 18, 1981, does not state when he conducted his review. *See* Record at 719.

**6.** An issue we need not decide in light of the substance of the evidence in issue and our limited scope of review is whether an agency lawyer attempted to suppress this evidence sought by Gellerman. In any event, the factual evidence is ambiguous. Nevertheless, we have no doubt that procedural fairness requires agency lawyers to respond candidly to inquiries about evidence.